UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT SANGO,

           Plaintiff,

v.

DAPHNE JOHNSON, *et al.*,

           Defendants.

_____/

Civil Action No. 13-12808
Honorable Arthur J. Tarnow
Magistrate Judge David R. Grand

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS JOHNSON, RUSSELL AND MACEACHERN'S MOTION TO DISMISS [92], GRANT DEFENDANTS CABALLERO, COLE, DELL, ELLISON, GUTHRIE, HOGAN, HUGHES, MCDAID, PEEL, RIVARD, ROWELY, SCHNEIDER AND SHAWLTZ'S MOTION FOR SUMMARY JUDGMENT [153], GRANT DEFENDANT MCCLELLAND'S MOTION TO DISMISS [160], GRANT DEFENDANT STEVE BENN'S MOTION TO DISMISS [162], DENY PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT [188, 196] AND DENY PLAINTIFF'S MOTIONS TO "DENY DEFENSE" [157, 171, 177]**

I.     **RECOMMENDATION**

    Before the Court are numerous dispositive motions.[1] Defendants Daphne Johnson, Richard Russell and Kenneth MacEachern (hereinafter referred to as the "Oaks Defendants") have filed a motion to dismiss Plaintiff Robert Sango's amended complaint against them, and Sango has filed two motions for summary judgment against the Oaks Defendants. [92, 188, 196]. Defendants Dustin Caballero, Andrew Cole, John Dell, Andrew Ellison, Nick Guthrie, "First

_____

[1] Sango previously moved to recuse the undersigned from this case. [163]. He also has filed a judicial misconduct complaint against the undersigned with the Sixth Circuit Court of Appeals related to the handling of this case. On October 7, 2014, the undersigned issued an order denying Sango's motion, and explaining why no reasonable, objective person, knowing all of the circumstances in this matter would question the undersigned's impartiality or conclude that the undersigned harbors any bias against Sango. [182]. For the same reasons as stated in the Court's order, Sango's recent filing of a civil action in the Eastern District of Michigan against the undersigned and his case manager (No. 14-14060) does not compel this Court to recuse itself.

Name Unknown" Hogan (identified by Defendants as James Hogan), Kelly Hughes, Joseph McDaid, "First Name Unknown" Peel (identified by Defendants as Bradley Peet), Steven Rivard, David Rowley, L. Schneider and "First Name Unknown" Shawltz's (identified by Defendants as Ray Sholtz) (hereinafter referred to as the "St. Louis Defendants") have filed a motion for summary judgment for failure to exhaust administrative remedies.  [153].  Defendant Janet McClelland has filed a motion to dismiss for failure to state a claim upon which relief can be granted.  [160].  Finally, Defendant Steve Benn has filed a motion to dismiss, or in the alternative for summary judgment.  [162].  Sango has responded to the latter three motions with motions of his own, styled as "motions to deny" the various defendants' motions.  [157, 171, 177].  This case has been referred to the undersigned for all pretrial proceedings pursuant to 28 U.S.C. § 631(b)(1)(A) and (B).  [60].  For the following reasons, the Court RECOMMENDS that: the Oaks Defendants' motion [92] be GRANTED; the St. Louis Defendants' motion [153] be GRANTED; McClelland's motion [160] be GRANTED; Benn's motion [162] be GRANTED; and that Sango's motions to deny Defendants' motions and his motions for summary judgment [157, 171, 177, 188, 196] be DENIED.

## II.    REPORT

### A.    Factual Background

Sango filed his original complaint in this action on June 27, 2013.  [1].  On February 6, 2014, the Magistrate Judge then assigned to the action issued an order requiring Sango to file an amended complaint containing "all of his claims and factual allegations against all defendants in one document" by March 6, 2014.  [34].  The case was referred to the undersigned on March 27, 2014, and at that time no amended complaint had been filed.  [60].  The Court held a telephonic

2

status conference on the matter on April 29, 2014, wherein Sango alleged that he had not received a copy of the Order requiring the filing of his amended complaint.   On the same date, the Court entered an order giving Sango until May 13, 2014, to file his amended complaint, and making clear that he was required to "identif[y] each defendant he is suing, the specific claim(s) made against each defendant, and the facts which support each of those claims."   [83].   On May 8, 2014, Sango filed an amended complaint against the above defendants.   [90].[2]

### 1.   *Oaks Defendants*[3]

Sango alleges that while he was being housed at the Kinross Correctional Facility ("KCF"), unspecified "staff" there "had an inmate stab [him]" in retaliation for him filing prior litigation in the Western District of Michigan against certain MDOC employees.   Sango alleges that he was transferred to the Oaks Correctional Facility ("OCF") in Manistee, Michigan, and advised the Oaks Defendants[4] of the alleged "hit," but that they failed to conduct an investigation and pursue a "Step III" grievance he had filed.   He claims he was given an improper security classification and then transferred from the Oaks Correctional Facility to the St. Louis

---

[2] Claims against two other defendants, Jeffrey Davis and Inspector First Name Unknown Olson, who have not been properly served in this action [123, 124], are dealt with in a separate Report and Recommendation filed on today's date.

[3] Although, per the Federal Rules of Civil Procedure, an amended complaint supersedes an original complaint such that the allegations in the original complaint are no longer actionable, the Court, given Sango's *pro se* status, refers on occasion to certain allegations in his original complaint, only to the extent that those allegations are necessary to give context to his amended claims (for instance, to identify the job description of a defendant as previously alleged).

[4] Defendant Johnson is the head of legal affairs for the Michigan Department of Corrections ("MDOC") and is responsible for litigation related to, among other things, grievances and appeals. Defendant Russell is the Manager of the Grievance Section of MDOC and responsible for coordination and investigation of grievances.   Defendant MacEachern is the Manger of Internal Affairs for MDOC and is legally responsible for conducting or directing investigations of alleged employee misconduct.

Correctional Facility ("SLF") in St. Louis, Michigan to "break [him] from continuing [his Western District of Michigan litigation]."   He further alleges that the Oaks Defendants' actions constitute deliberate indifference and negligence.

### 2.      *St. Louis Defendants*

Sango also alleges retaliation by the St. Louis Defendants.   He alleges that, while housed at the St. Louis facility, defendant Corrections Officer ("C/O") Sholtz began to harass him, closed the cell door on his hands and solicited other inmates to stab him.   He alleges that he reported this conduct to defendant Assistant Resident Unit Supervisor ("ARUS") Kelly Hughes and that no investigation was conducted.   He further alleges that ARUS Hughes then stopped calling Sango out for receipt of legal mail.   He alleges that Hughes's conduct was due, in part, to a conspiracy with defendant Johnson to pressure Sango into terminating his pending litigation.

Sango alleges that on June 20, 2013, he filed his original action against the Oaks Defendants, and that on June 23, 2013, defendant Andrew Cole (identified by Sango as a lieutenant, but identified by defendants as a captain) used an emergency procedure to transfer Sango between units.   Upon his arrival in his new unit, defendant C/O L. Schneider allegedly told a gang leader that Sango was transferred because he was having trouble with that same gang in his old unit.   Sango alleges that these rumors were dispelled when the gang members of both units conferred with each other and discovered there was no such trouble.   Sango claims that he obtained written statements of these gang members regarding how they became aware of the alleged dispute resulting in his transfer.

Sango alleges that on June 26, 2013, a search was conducted of his cell by defendant C/O Nick Guthrie and that at the time of the search, Sango was in possession of these gang member

witness statements, which were sitting in plain view in his cell.   Sango alleges that such searches were conducted to harass and retaliate against him and resulted in destruction of his personal property.   Sango alleges that he left his cell as ordered for the search, and that Guthrie confronted him on his return, upset with the content of the witness statements.   Guthrie allegedly brought up the issue of the litigation against defendant Johnson and grabbed Sango from behind, attempted to spray pepper spray in his mouth, took him to the floor and yelled at him to stop resisting.   At this point, Sango alleges that defendant C/O Dustin Caballero approached and called Sango a name, discharged his pepper spray at Sango while he and Defendant Guthrie were still on the floor, sprayed himself instead and ran away screaming.   Sango alleges that defendant ARUS James Hogan arrived and grabbed Sango's penis.   Then defendant C/O Rowley arrived and deployed his Taser on Sango, striking him in the spine, and stated, "Shit he will probably never walk again after that much juice to the spine.   Isn't that law guy . . . I wanted to hit him right at the back of the neck, that last one, but I didn't want to get you Nick."

Sango alleges that he was then taken to segregation.   On the way, defendant Captain Cole approached and allegedly told defendants Sergeant Andrew Ellison, C/O John Dell, C/O Rowley and C/O Joseph McDaid that Sango was going "in on his head."   Sango alleges these defendants picked him up by his arms and legs and slammed his head into the shower wall.   Two hours later, defendant Schneider secured Sango's property and informed him that she found a razor on a toothbrush.   Sango alleges that the weapon was not his, but was pinned on him either by another inmate or by defendant Schneider herself.   Sango further alleges that numerous pieces of his personal property went missing after the search, including books, photographs, and legal documents, as well as the gang member witness statements.

5

Sango alleges that defendant Ellison authored a critical incident report documenting the incident that included allegedly false statements that Sango had tried to run out of the unit during the search and that he attempted to take defendant Guthrie "down."[5]   Sango alleges that "[d]uring this entire controversy" he continued to notify defendant Warden Steven Rivard but that Rivard failed to investigate, either by viewing a video that allegedly existed documenting the incident or interviewing any witnesses.   Sango charges the various St. Louis Defendants with a number of different causes of action, including civil conspiracy under § 1983, retaliation, negligence, malicious prosecution, violation of free exercise of religion, cruel and unusual punishment, illegal search and seizure, deliberate indifference and abuse of process.

### 3.   *Defendant Steve Benn*

Sango alleges that defendant Sergeant Steve Benn failed to properly investigate the incident at the St. Louis facility, including failing to question Sango's witnesses or review the crime scene or video.   He alleges that at one point, when he was "gaining ground" in the criminal case that was brought as a result of the incident, Benn and other St. Louis correctional staff "furnished" a new eye witness to support the officers' story in order to pressure Sango to plead guilty.   He also claims that the eye witness' statement contradicts defendant Guthrie's story. Sango charges Benn with civil conspiracy and abuse of process.

---

[5] Sango was charged criminally for his alleged conduct, though he recently was found not guilty by a jury.   [201].

4.      *Defendant Janet McClelland*[6]

Sango's amended complaint alleges that he informed McClelland of the fact that prison cell searches were being conducted to harass and retaliate against him, as well as to destroy his personal property, and that despite being so informed, McClelland failed to investigate or take corrective action.   Sango charges McClelland with negligence.

B.      **The Parties' Motions**

The Oaks Defendants argue that Sango fails to state a claim against them since his allegations all surround their alleged failure to investigate past conduct.   They argue that a mere failure to investigate cannot be the basis of a Section 1983 claim, because a plaintiff must allege specific affirmative conduct on the part of a defendant.   Sango responds that he has alleged personal involvement in that the Oaks Defendants were notified of incidents of his physical harm and failed to investigate.   He asserts that by doing so they "authorized, approved, and knowingly acquiesced" in the physical harm he allegedly suffered.   He further argues that the Oaks Defendants' "deliberate" failure to perform their duties eviscerates their defense of qualified immunity.   Finally, he argues that the Oaks Defendants purposefully hindered his ability to continue litigation against MDOC and its officers.   Sango also affirmatively moves for summary judgment against the Oaks Defendants, adding a number of facts not contained in his complaint, and arguing that the Oaks Defendants had a duty to protect him and investigate his claims.   [188, 196].

The St. Louis Defendants move for summary judgment against Sango, arguing that he

---

[6]  Sango identified one defendant only as the "Director of the Michigan Civil Service Commission."   Apparently, however, there is no such position within the State of Michigan, which led this defendant to be identified as Janet McClelland, the State Personnel Director, who is vested with the administration of the Civil Service Commission's powers.   [159, 185].

failed to exhaust his administrative remedies against them, as the only grievance he filed while at the St. Louis facility was a Step Three grievance, which was returned to Sango as being incomplete, and was never resubmitted according to MDOC's records.   Sango responds to the St. Louis Defendants' motion by arguing that summary judgment is premature as he has not been given an opportunity to conduct discovery.   [157].

Defendant McClelland moves to dismiss Sango's complaint against her, arguing that he fails to state a claim upon which relief can be granted because he fails to allege a federal claim against her, fails to allege any facts that amount to McClelland's personal involvement in any of the above alleged actions, and fails to allege the factors required of a negligence claim.   She argues that his claims against her also fail because her alleged failure to investigate is not sufficient to state a claim under Section 1983, and she is immune from suit in her official capacity under the Eleventh Amendment.   Sango responds that federal jurisdiction exists here where the claims against McClelland allegedly form part of the same case and controversy as the other claims in his complaint.   [166].   He further argues that her official duties necessarily make her the one responsible for employment issues at MDOC and thus her inaction in this regard in the face of his repeated complaints constitutes actionable conduct under Section 1983.   [*Id.*].   Finally, Sango argues that the facts he pleads are sufficient to overcome McClelland's motion.   [177].

Defendant Benn moves to dismiss and/or for summary judgment against Sango, arguing that he is immune from suit in his official capacity under the Eleventh Amendment, that Sango has failed to allege more than bare legal conclusions against him, and that even if his allegations are considered true and sufficient, Benn is entitled to qualified immunity.   Sango responds the same way he responded to the St. Louis Defendants' motion, that summary judgment is premature prior

8

to commencement of discovery.   [171].

The Court notes that Sango's "Motions" to deny the defendants' dispositive motions are more "responses" than "motions."   [157, 171, 177].

### C.   Legal Standards

#### 1.   Motion to Dismiss

A motion to dismiss pursuant to Fed. R. of Civ. P. 12(b)(6) tests a complaint's legal sufficiency.   Under Fed. R. Civ. P. 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."   "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"   *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Id.* (*citing Twombly*, 550 U.S. at 556).   The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]."   *Twombly*, 550 U.S. at 556.   Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief."   *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true.   *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   That tenet, however, "is inapplicable to legal conclusions.   Threadbare recitals of the

9

elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to sufficiently comport with basic pleading requirements.   *Iqbal*, 129 S.Ct. at 1949.   *See also*, *Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 Fed. Appx. 49, 51 (6th Cir. 2009).   Furthermore, a court is not required to "create a claim which [a plaintiff] has not spelled out in his pleading."   *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).   Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."   *Iqbal*, 129 S.Ct. at 1949.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers.   *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007).   Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed."   *Baker v. Salvation Army*, No. 09-11424, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

### 2.   *Motion for Summary Judgment/Failure to Exhaust*

The St. Louis Defendants have moved for summary judgment on Sango's claims against them on the basis of his failure to exhaust administrative remedies.   Under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, before a prisoner may bring an action challenging his prison conditions, he must first exhaust available administrative remedies. 42 U.S.C. § 1997e(a). *See also Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).   A prisoner must exhaust available administrative remedies even if he may not be able to obtain the specific type of relief he seeks in the state

10

administrative process.   *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.   "This requirement is a strong one.   To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile."   *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011 (internal quotations and citations omitted)).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216.   The burden is on the defendant to show that a plaintiff failed to properly exhaust his administrative remedies.   However, when faced with a motion to dismiss or for summary judgment based on a failure to exhaust, a prisoner cannot just sit on his laurels, but must offer competent and specific evidence showing that he indeed exhausted his remedies, or was otherwise excused from doing so.   The Supreme Court reiterated that "no unexhausted claim may be considered."   549 U.S. at 220.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law.   *Jones*, 549 U.S. at 218-19.   In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion."   548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."   *Id.* at 90; *see also Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009).   Thus, when a prisoner's grievance is not filed within the prescribed period, or is incomplete, his claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court.   548 U.S. at

11

90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see also* 42 U.S.C. § 1997e(a).

**D.     Analysis**

Sango's allegations all generally relate to alleged retaliation by Defendants stemming from his filing grievances and, ultimately, a civil action related to the alleged stabbing that took place at KCF.[7]   Retaliation against a prisoner in response to his exercise of a constitutional right violates the Constitution.   *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).   In order to set forth a First Amendment retaliation claim, Sango must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that protected conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.   *Id.*   The Sixth Circuit has also specifically held that a plaintiff must prove that the exercise of a protected right was not only part of the motivation, but a substantial or motivating factor in the defendant's alleged retaliatory conduct.   *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (*citing Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977).

As to the adverse action requirement, the plaintiff must also show that it actually resulted in an injury or consequence to him.   *See Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 584 (6th Cir. 2012) (where adverse action resulted in no consequences for plaintiff and where only allegation of injury was emotional, court found allegations insufficient to state a claim for First Amendment retaliation).   Generally, whether an adverse action is sufficient to deter a person of ordinary firmness is a question of fact.   *Id.* at 583-84.   However, "[t]he analysis of this factor must be tailored to the circumstances such that prisoners might have to endure more than public

---

[7] Presumably, Sango is claiming that these alleged acts of retaliation by the Defendants violated the First Amendment, though he does not specifically claim a First Amendment violation.

12

employees, who in turn might have to endure more than the average citizen." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010). "[T]rivial inconveniences and minor slights will not amount to an adverse action." *Hazel v. Quinn*, 933 F. Supp. 2d 884, 890 (E.D. Mich. 2013).

### 1.   Eleventh Amendment

Sango's amended complaint makes clear that he is suing all Defendants in both their official and individual capacities. [90 at 1]. All of Sango's claims for damages against Defendants in their official capacities are barred by Eleventh Amendment immunity. The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court. *Johnson v. Dellatifa*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or her official capacity is simply another way of pleading an action against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *Will*, 491 U.S. at 71. Accordingly, Defendants are entitled to dismissal with prejudice of all Sango's claims for monetary damages against them in their official capacities.

### 2.   Oaks Defendants

Sango alleges that in August 2012, he contacted defendants MacEachern and Johnson "asking for an investigation into" his allegations that staff at KCF had coerced another inmate to stab him. [90 at ¶ 1]. He claims they failed to investigate the allegations, though he admits he

13

was transferred to OCF.   He further alleges that he sent a Step Three Grievance regarding the issue to defendant Russell, but that Russell falsely denied, in an affidavit in another case, ever receiving the grievance, and failed to submit the grievance to Internal Affairs as he was required by policy to do.[8]   Finally, he alleges that his transfer from the Oaks Correctional Facility to the St. Louis Facility was a "strategy devised by" defendant Johnson "to break me from continuing my civil action" regarding the stabbing, and that this is evidenced by the fact that he was being held and was transferred as a Level IV prisoner when he was actually not a level IV prisoner.[9]

First, to the extent Sango alleges claims against the Oaks Defendants premised upon their alleged failure to investigate the prior conduct of others, his claims fail.   It is well-settled that a civil-rights plaintiff must allege the personal involvement of a defendant to state a claim under 42 U.S.C. § 1983.   *See, e.g.*, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-92 (1978) (holding

---

[8] It does not appear that Sango is specifically alleging the falsification of testimony in this case. Rather, he appears to be merely citing this information as background for his claims that he provided notice to defendant Russell of his and other officers' failings in investigating Sango's claims, to no avail.   Indeed, the section about Russell is merely incorporated as a "Note" to the complaint.   [90 at ¶1].

[9] Sango attempts to supplement these bare allegations through his supplemental response to the Oaks Defendants' motion to dismiss.   [111].   In that supplement, he adds further specificity to his allegations against defendant Johnson, stating that he was originally a level II security threat, but was sent to the Oaks Facility from KCF as a level IV due to a lack of bed space.   When he began complaining about being held as a Level IV, noting that two Level II units had opened up at the Oaks Facility since his transfer, he alleges that Johnson "sent word" to him that if he ended his litigation, he would be returned to his proper security level.   *Id.* at 2.   He argues that his security level was arbitrarily increased prior to his transfer to St. Louis to "justify" a "lateral" security level transfer.   *Id.*   He alleges that St. Louis does not provide his religious meal, which he alleges was intentionally done in violation of his right to freedom of religion.   *Id.* at 2-3.   Finally, he alleges that his security level was reduced after transfer back to a level II on a "corrected" security screen, but that his holding level remained at a level IV in order to "break him from litigating."   *Id.* at 2. His allegations regarding his security classifications at the various points in time (although not the reasons for those classifications) are corroborated by documents he attaches to this response, namely the security screen worksheets.   [111 at 5-7].   However, none of these worksheets was completed or approved by any of the Oaks Defendants.   *Id.*

14

that § 1983 liability cannot be based upon a theory of *respondeat superior*); *Taylor v. Michigan Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (explaining that a plaintiff must allege facts showing that the defendant participated, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability).   Any assertion that the Oaks Defendants did not properly respond to calls for investigation of alleged misconduct by other officials is insufficient to state a claim under § 1983.   *See Poe v. Haydon*, 853 F.2d 418, 429 (6th Cir. 1988).

In *Poe*, the plaintiff worked as a janitor for the Commonwealth of Kentucky.   She allegedly had complained to her supervisor that another janitor was physically and sexually harassing her on the job.   The supervisors took certain measures to address the allegations, but did not change Poe to the day shift, as she had requested.   She then filed a Section 1983 lawsuit in which "she argued principally that the [supervisors] were aware of the hostile and abusive work environment caused by [her colleague's] sexual harassment, but failed to take immediate action to correct the situation, including an adequate investigation of the matter…[and that they had therefore] acquiesced in, condoned and ratified the [hostile work environment]…" *Id.* at 422.   The Sixth Circuit found these allegations did not support a claim under Section 1983 because Poe did not aver "that 'any of the supervisory officials … actively participated in or authorized any harassment' by [her colleague].   At best, she has merely claimed that the [supervisors] were aware of alleged harassment, but did not take appropriate action.   This is insufficient to impose liability on supervisory personnel under § 1983." *Id.* (internal citations omitted).   *See also, e.g.*, *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (supervisory official's mere awareness of a complaint of allegedly illegal conduct, and her subsequent failure to take corrective action, is insufficient to trigger § 1983 liability because "liability under § 1983 must be based on active

15

unconstitutional behavior and cannot be based upon 'a mere failure to act.'") (internal citation omitted).   Similarly, Sango's claims that the Oaks Defendants failed to properly investigate his allegations amount to nothing more than an alleged "mere failure to act" for which § 1983 liability does not lie.   Accordingly, those claims should be dismissed, and Sango's motion for summary judgment [188] should be denied.[10]

To the extent Sango claims that his transfer between prisons was based on a strategy devised by defendant Johnson, he has similarly failed to state a claim for relief.   Generally, inmates have no inherent constitutional right to avoid transfer from one prison to another.   *Olim v. Wakinekona*, 461 U.S. 238, 245-46 (1983).   However, the Sixth Circuit has held that, despite this general principle, prison officials may not transfer a prisoner "as a means of retaliating against him for exercising his First Amendment rights."   *Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010). In *Hill*, the Sixth Circuit noted that prison transfers can constitute adverse action where the transfer "would result in foreseeable, negative consequences to the particular prisoner."   *Id.* at 475 (citing *Siggers-el v. Barlow*, 412 F.3d 693, 701-702 (6th Cir. 2005).

It should be noted first that Sango's complaint, standing alone, fails to allege any negative consequences that resulted from his transfer.   [90].   While he has attempted to supplement the allegations in his amended complaint with those from his response brief, it is axiomatic that a plaintiff may not amend his complaint through allegations made in a response to a motion to dismiss.   *See Jocham v. Tuscola County*, 239 F. Supp. 2d 714, 732 (E.D. Mich. 2003) (plaintiff may not amend his complaint through arguments in his brief in opposition to motion).   While

---

[10]   The Court also notes that Sango has not alleged facts showing that any injury he suffered is the result of a policy or regulation, or that any improper conduct arose from a deliberate failure to adequately investigate employees.   *See Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (setting forth three-part test for such claims).

Sango is proceeding *pro se*, and is thus is entitled to some leniency, he is still required to be aware

of, and abide by, the rules and procedures of this Court.   *Spruce v. Chase Bank*, No. 13-10711,

2014 U.S. Dist. LEXIS 116064 (E.D. Mich. July 14, 2014) *adopted by* 2014 U.S. Dist. LEXIS

5449 (E.D. Mich. Aug. 20, 2014) (*pro se* plaintiffs, "no less than attorneys, are expected to comply

with procedural rules.").   Further, it is relevant that Sango is not just any *pro se* litigant, but has

frequently litigated in the Eastern and Western Districts, and thus is more familiar with such basic

federal court pleading requirements than other *pro se* prisoners might be.[11]   Finally, this Court

specifically instructed Sango, on two occasions, to file an amended complaint that contained all

claims against all Defendants, including the factual support for those claims, in one document.

---

[11] *See e.g. Sango v. Bell*, No. 08-10514, 2008 U.S. Dist. LEXIS 17567 (E.D. Mich. Mar. 7, 2008) (complaint dismissed for failure to pay filing fee or petition to proceed *in forma pauperis*); *Sango v. Harpst*, No. 08-12709, 2008 U.S. Dist. LEXIS 94952 (E.D. Mich. Nov. 14, 2008) (adopting R&R granting summary judgment in favor of defendants regarding retaliation for litigation); *Sango v. Riggs*, No. 12-1179, 2013 U.S. Dist. LEXIS 16381 (W.D. Mich. Feb. 7, 2013) (complaint dismissed for failure to pay filing fee or petition to proceed *in forma pauperis*); *Sango v. Dennis*, No. 12-332, 2013 U.S. Dist. LEXIS 111707 (W.D. Mich. Aug. 8, 2013) (overruling objections and adopting R&R dismissing complaint on summary judgment); *Sango v. Grambau*, No. 12-1199, 2014 U.S. Dist. LEXIS 41798 (W.D. Mar. 28, 2014) (overruling objections and adopting R&R dismissing complaint on summary judgment); *Sango v. Rowley*, No. 14-10904, 2014 U.S. Dist. LEXIS 33976 (E.D. Mich. Mar. 17, 2014) (denying motion for temporary restraining order and preliminary injunction against officer); *Sango v. Novak*, No. 14-343, 2014 U.S. Dist. LEXIS 56078 (Apr. 23, 2014) (dismissing complaint at screening stage pursuant to 42 U.S.C. § 1915, and finding claims to be frivolous); *Sango v. Ault*, No. 14-345, 2014 U.S. Dist. LEXIS 59804 (W.D. Mich. Apr. 30, 2014) (dismissing all but one defendant on motions to dismiss); *Sango v. Hammond*, No. 14-283, 2014 U.S. Dist. LEXIS 62184 (W.D. Mich. May 6, 2014) (dismissing complaint at screening stage pursuant to 42 U.S.C. § 1915); *Sango v. Miniard*, No. 14-344, 2014 U.S. Dist. LEXIS 78421 (W.D. Mich. June 10, 2014) (same); *Sango v. Huss*, No. 14-2, 2014 U.S. Dist. LEXIS 79912 (W.D. Mich. June 12, 2014) (same); *Sango v. Lewis*, No. 14-342, 2014 U.S. Dist. LEXIS 97464 (W.D. Mich. July 18, 2014).

Indeed, Sango has filed so many complaints that he has recently been barred from proceeding *in forma pauperis* by the "Three Strikes" rule of 28 U.S.C. § 1915(g).   *See Sango v. Wakley*, No. 14-703, 2014 U.S. Dist. LEXIS 92194 (W.D. Mich. July 8, 2014) (denying leave to proceed *in forma pauperis* because at least three complaints dismissed for failure to state a claim); *Sango v. Curtis*, No. 14-823, 2014 U.S. Dist. LEXIS 112655 (W.D. Mich. Aug. 14, 2014) (same).

[34, 83].   The Court will not countenance Sango's failure to follow the Federal Rules' pleading requirements and this Court's instructions by permitting him to further amend his complaint through his response to the Defendants' dispositive motion.   *Jocham*, 239 F. Supp. 2d at 732.

However, even if the Court were to consider Sango's additional allegations, his claim against defendant Johnson would still fail.   In neither his complaint nor his supplement does he do more than assert the bare conclusion that his transfer was part of a "strategy" devised by defendant Johnson to stop him from litigating his case.   He offers no additional facts to support this theory, and the documents he attaches to his supplement belie any personal involvement of Johnson, as she was not the one classifying or approving his security level classification or transfer status. Since Sango's allegations in this respect do no more than "create speculation or suspicion of a legally cognizable cause of action," they fail to state a claim upon which relief can be granted. *See Bredesen*, 500 F.3d at 527; *Novak*, 2014 U.S. Dist. LEXIS 56078 at *7-8 (mere allegations of "ultimate fact of retaliation, supported only by cursory descriptions" are insufficient to state claim for retaliation under § 1983).   Accordingly, the Oaks Defendants' motion to dismiss [92] should be granted and Sango's claims against them should be dismissed.

### 3.        *St. Louis Defendants*

The St. Louis Defendants move for summary judgment against Sango on the basis of his failure to exhaust administrative remedies.   They argue that Sango's only grievance filed while at the St. Louis facility was a Step Three grievance, which was returned to him for being incomplete and which he never resubmitted in complete form.   The St. Louis Defendants' arguments are supported by the affidavit of grievance coordinator defendant Russell, who avers that he searched the MDOC database for Sango's grievances and only located one grievance on file during his time

at the St. Louis facility, the one noted above (while also averring that the date on that grievance is incorrect and should read September 1, 2013 instead of September 1, 2012, given the grievance identifier number assigned to it).   [153 Ex. B].   Sango does not counter this evidence with either contrary evidence or even argument.   Instead, he merely argues that summary judgment is premature when he has not yet been permitted to take discovery.   However, he does not specify what discovery he needs in order to properly respond to this motion.

MDOC Policy Directive 03-02-130 (effective July 9, 2007) sets forth the applicable grievance procedures.   The following is an overview of the grievance process.   [153, Ex. A]. Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control.   *Id.* at ¶ P.   If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution.   *Id.*   The Policy Directive also provides the following directions for completing Step I grievance forms:   "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how).   Dates, times, places, and names of all those involved in the issue being grieved are to be included."   *Id.* at ¶ R (emphasis in original).   The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent.   *Id.* at ¶¶ W, X.   If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due.   *Id.* at ¶ BB.   The respondent at

19

Step II is designated by the policy.   The Step II respondent is generally the warden or the warden's designee.   *Id.* at ¶ DD.   If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form.   *Id.* at ¶ FF.   The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due.   *Id.* at ¶ FF.   The Grievance and Appeals Section is the Step III respondent.   *Id.* at ¶ GG.   Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process.   *Id.* at ¶ S.   "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing."   *Id.* Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process.

Here, the uncontroverted testimony of defendant Russell, along with the printout of the MDOC grievance database, reveals that the only grievance received at the St. Louis correctional facility during Sango's incarceration there was a Step Three grievance received on September 1, 2013.   [153, Ex. B ¶¶ 7-9].   That grievance was returned to Sango on October 11, 2013, because it had not been preceded by a Step I (or presumably, Step II) grievance as is required per the above-described policy, and had not been resubmitted by him in complete form.   [*Id.*].[12]

Sango's response does not even purport to dispute this evidence.   While Sango argues that he needs additional discovery in order to properly respond, he does not identify what that discovery might be or what conclusions could be drawn from it.   This is insufficient to rebut a

---

[12] According to MDOC's records, Sango did not file another grievance until December 2013, when he was housed at the Ionia Correctional Facility.   *Id.* at 4.

properly supported motion for summary judgment.  *See Dennis*, 2013 U.S. Dist. LEXIS 111707 at *4-5 ("The Sixth Circuit has held that 'nebulous assertions' that more discovery time will produce evidence to defeat summary judgment are unavailing") *citing Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003).   Moreover, the Court notes that Sango's own amended complaint is consistent with Russell's testimony that he skipped Steps I and II of the grievance process.   [90 at ¶ 1(b) ("I wrote to [Defendants Johnson and MacEachern], and sent a Step III grievance…")].

Because Sango has failed to raise a material question of fact that he did not properly complete the MDOC grievance procedure through Step III, and has failed to argue, much less show, how additional discovery would alter that finding, he has not exhausted his administrative remedies, and therefore his claims against the St. Louis Defendants should be dismissed, without prejudice.  *See Payette v. Gerth*, No. 10-256, 2011 U.S. Dist. LEXIS 86553, *12 (W.D. Mich. July 14, 2011) *adopted by* 2011 U.S. Dist. LEXIS 86565 (W.D. Mich. Aug. 5, 2011) (finding administrative remedies unexhausted where prisoner failed to resubmit grievance after it was returned for being incomplete).   Therefore, the St. Louis Defendants' motion for summary judgment [153] should be granted, and Sango's counter-motion [157] should be denied.

### 4.    *Defendant Benn*

Sango charges defendant Benn with civil conspiracy and abuse of process.   Sango alleges that Benn, after receiving the critical incident report relating to the alleged incident between Sango and several correctional officer defendants, failed to investigate the matter and, instead, fabricated new "eye-witness" testimony of an inmate, to buttress the story of defendant Guthrie.   To the extent Sango alleges Benn's liability is premised on his failure to investigate his allegations, the Court has already explained why such claims fail.  *See supra* at 14-16.

To the extent Sango claims that Benn fabricated testimony of an inmate in order to buttress defendant Guthrie's story, and to attempt to coerce Sango into pleading guilty to the criminal charges against him arising out of the altercation, he has failed to state a claim for relief.   Even if the allegations Sango claims are true, he has not pleaded beyond threadbare conclusions that this conduct constituted retaliation,[13] nor has he pleaded any facts that permit this Court to infer that the conduct was part of the conspiracy he claims defendant Benn was a part of.[14]   Sango fails to allege facts to support his conclusion that Benn's alleged conduct was taken in retaliation for any protected conduct Sango engaged in, or even that Benn was aware of Sango's engagement in protected conduct.   Therefore, Sango's claims against defendant Benn should be dismissed for failure to state a claim upon which relief can be granted.   Correspondingly, Sango's counter-motion [171] should be denied.

### 5.   *Defendant McClelland*

Sango alleges that Defendant McClelland committed negligence by failing to investigate

---

[13] Alleging merely the ultimate fact of retaliation is insufficient.  *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987).  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 Fed. Appx. 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Murray v. Unknown Evert*, 84 Fed. Appx. 553, 556 (6th Cir. 2003) ("Conclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial") (internal quotations omitted); *Lewis v. Jarvie*, 20 Fed. Appx. 457, 459 (6th Cir. 2001) ("bare allegations of malice on the defendants' parts are not enough to establish retaliation claims"); *Desmone v. Adams*, 1998 U.S. App. LEXIS 24030, 1998 WL 702342 at *3 (6th Cir., Sep. 23, 1998) ("[a] claim of retaliation must include a chronology of events from which retaliation may plausibly be inferred").

[14] To prevail on a conspiracy claim asserted under § 1983, Sango must establish: (1) there existed a "single plan"; (2) the conspirators "shared a conspiratorial objective to deprive [plaintiff] of [his] constitutional rights; and (3) an overt act in furtherance of the conspiracy was committed."  *Faith Baptist Church v. Waterford Twp.*, 522 Fed. Appx. 322 (6th Cir., Apr. 11, 2013) (citation omitted).

the cell searches that he claims were being used to harass and retaliate against him.   [90 at ¶ 6].

Negligence is a state law claim, and Sango does not appear to allege any federal claim against

Defendant McClelland.[15]   Further, the Court has recommended dismissing Sango's claims

against the officers allegedly responsible for the searches, for Sango's failure to exhaust his

administrative remedies.   Because Sango's state law claim against McClelland arises out of that

transaction, and because the Court has recommended dismissing the related federal claims, it

recommends granting McClelland's motion to dismiss [160] with prejudice as to any federal

claims raised against her, and without prejudice as to the state law negligence claim.

*Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 521 (6th Cir. 2007) (citing *United Mine*

*Workers of Am. v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966)).[16]   For the

same reasons, Sango's motion to deny McClelland's motion [177] should be denied.

### 7.   *Qualified Immunity*

Because the Court is recommending dismissal of Sango's claims against the Defendants

for the reasons discussed above it need not address the issue of qualified immunity.

---

[15] To the extent Sango intended to assert a claim against McClelland for this alleged negligence under Section 1983, that claim would fail for the same reasons that his other "failure to investigate" claims fail.   *See supra* at 14-16.

[16] "Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues."   *Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006).   Consequently, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the state law claims should be dismissed without reaching their merits.   *See Landefeld v. Marion Gen. Hosp.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *Faughender v. City of N. Olmsted*, 927 F.2d 909, 917 (6th Cir. 1991); *Coleman v. Huff*, No. 97-1916, 1998 U.S. App. LEXIS 18242, 1998 WL 476226, at *1 (6th Cir. Aug. 3, 1998); *Sango v. Ault*, No. 14-345, 2014 U.S. Dist. LEXIS 59804, *30-31 (W.D. Mich. Apr. 30, 2014) (dismissing state law claims against certain individual defendants where federal claims against those defendants were also dismissed, while retaining federal claims against other individual defendants).

8.  *Supplemental Jurisdiction*

In addition to his federal claims, Sango also alleges various state law claims against Defendants.  As the Court is recommending dismissal of Sango's federal claims against the Defendants, it also recommends declining to exercise supplemental jurisdiction over any of Sango's remaining state law claims against them.  *See supra*, fn. 16.  Accordingly, Sango's state law claims against all Defendants should be dismissed without prejudice.

## III.   CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS GRANTING** the Oaks Defendants' motion to dismiss **[92]**, **GRANTING WITHOUT PREJUDICE** the St. Louis Defendants' motion for summary judgment **[153]**, **GRANTING** defendant McClelland's motion to dismiss **[160]**, and **GRANTING** defendant Benn's motion to dismiss and/or for summary judgment.  **[162]**.  The Court further **RECOMMENDS DENYING** Sango's motions "to deny" the Defendants' dispositive motions [157, 171, 177] and **DENYING** Sango's motions for summary judgment.  **[188, 196]**.

Dated: October 29, 2014                    s/David R. Grand
                                           DAVID R. GRAND
                                           UNITED STATES MAGISTRATE JUDGE

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140

24

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).   The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.   *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).   Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.   A party may respond to another party's objections within 14 days after being served with a copy.   *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).   Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.


## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 29, 2014.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager